A96A1599. AT&T et al. v. COTTEN.

(474 SE2d 102)

RUFFIN, Judge.

In this discretionary appeal, AT&T and its workers' compensation insurer, Travelers Insurance Company (collectively "AT&T"), appeal from the superior court's order affirming the award of the appellate division of the State Board of Workers' Compensation. The appellate division's award reversed the decision of the administrative law judge ("ALJ"). In their sole enumeration of error, AT&T asserts the superior court erred in concluding that the appellate division applied the correct standard of review. For reasons which follow, we reverse and remand with directions.

Cotten, who was employed by AT&T, sustained a work-related injury to his lower back on July 27, 1988. Cotten received authorized medical treatment from Dr. Howard Collier, who referred Cotten to Dr. Michael Fleming, a neurosurgeon. Beginning in 1988, Cotten also sought treatment from Dr. Dwight Jones, his private medical doctor. AT&T filed a notice to controvert Dr. Jones' treatment, claiming Dr. Jones was unauthorized to treat Cotten. Thereafter, Cotten paid Dr. Jones from his personal funds.

On November 20, 1989, Dr. Fleming released Cotten to return to light-duty work. On December 28, 1992, Cotten returned to Dr. Jones for treatment. Cotten alleges that he went to Dr. Jones based upon the referral of Hattie Bonds, an AT&T nurse. However, Bonds was killed in a car accident and was unable to testify as to her conversation with Cotten. Dr. Cheloliber, medical director of AT&T, testified that Bonds' alleged statements would have been in violation of company policy concerning change of authorized physicians. He further testified that AT&T distinguishes between a claimant's private medical doctor and an authorized workers' compensation doctor, and Bonds led him to believe Dr. Jones was Cotten's private medical doctor.

In January 1993, Cotten returned to light-duty work for AT&T. By letter dated February 3, 1993, AT&T informed Cotten that he needed to see Dr. Fleming to evaluate his condition and determine if he had any permanent partial disability. Cotten did not see Dr. Flem-

ing as instructed. On January 20, 1994, AT&T filed a second notice to controvert Dr. Jones' treatment on the ground that Cotten never requested a change in physician from AT&T. Cotten admitted he never requested a change in physician; however, from January 1993 until September 1994, AT&T paid Dr. Jones' medical fees for Cotten.

In June 1994, Dr. Jones instructed Cotten to remain out of work based upon low back syndrome. On July 18, 1994, Cotten underwent an independent medical examination by Dr. Basil Griffin, who found no objective signs of abnormality in his orthopedic and neurological examination of Cotten and released Cotten to return to work. On August 15, 1994, AT&T scheduled an appointment for Cotten to see Dr. Fleming, but Cotten did not keep this appointment or provide an explanation for missing it. AT&T contends that it has and continues to hold a light-duty position open for Cotten.

The ALJ found that Cotten never requested a change of physician from AT&T, never obtained authorization from AT&T to use Dr. Jones, and never requested the Board to order a doctor change. While a letter from Dr. Jones dated February 22, 1994, stated that Bonds referred Cotten to him and that Travelers Insurance paid his charges since December 28, 1992, the ALJ found that the company may have paid Dr. Jones under an employee-sponsored benefit plan other than workers' compensation. The ALJ further found that AT&T controverted treatment by Dr. Jones on two occasions and requested Cotten to return to Dr. Fleming on two occasions. Based on these facts, the ALJ concluded that Dr. Fleming remained Cotten's authorized treating physician and that Dr. Jones was not an authorized treating physician.

The ALJ also noted that Dr. Griffin, who performed an independent medical examination on Cotten, found " 'no objective signs of orthopedic or neurological abnormality' " and released Cotten to return to work on July 18, 1994. In addition, after reviewing Dr. Jones' deposition, the ALJ found that while Dr. Jones disabled Cotten from work on June 2, 1994, he did not disable Cotten from work after December 1994 and testified that Cotten was capable of returning to light-duty work. Based on these facts, the ALJ concluded there was insufficient evidence to support Cotten's current alleged disability from light-duty work because Dr. Jones' restrictions were based upon subjective complaints by Cotten and Dr. Jones testified Cotten was able to continue light-duty work, which has been continuously available.

The appellate division vacated the ALJ's findings of fact and conclusions of law. It found that AT&T had authorized and acquiesced in treatment by Dr. Jones through (1) the statements of Bonds and (2) the payment of Dr. Jones' fees, beginning in December 1992, for almost two years. According to the appellate division, AT&T's second

notice to controvert, filed in January 1994, was too late since Dr. Jones was already the authorized treating physician at that time. The appellate division further found that Cotten became disabled on June 2, 1994, and remains disabled. Based on these findings, the appellate division concluded Cotten was entitled to payment for Dr. Jones' past and future medical treatment and the recommencement of income benefits based on a change in condition.

The superior court affirmed the appellate division's award, finding it was supported by the evidence and that the appellate division applied the correct standard of review.

Under the 1994 amendment to OCGA § 34-9-103 (a), "[t]he findings of fact made by the administrative law judge in the trial division shall be accepted by the appellate division where such findings are supported by a preponderance of competent and credible evidence contained within the records." This amended subsection deleted language contained in the former version which gave the State Board (now the appellate division) discretion to hear additional testimony. Thus, in *Clinical Arts &c. v. Smith*, 218 Ga. App. 681 (462 SE2d 757) (1995), we held that "although the Board was previously authorized to engage in a de novo consideration of the evidence and substitute its findings for those of the ALJ as long as there was any evidence to support its substituted findings, the Appellate Division does not have such authority under the new standard of review." *Bennett-Murray, Inc. v. Barnes*, 222 Ga. App. 137, 138 (473 SE2d 166) (1996). See also *Truckstops of America v. Engram*, 220 Ga. App. 289 (2) (469 SE2d 425) (1996).

However, the new standard still authorizes the appellate division to weigh the evidence, make determinations regarding the credibility of the evidence, and engage in a broader standard of review than that permitted under the "any evidence" standard. Id.

In the present case, the appellate division's award does not mention which standard it employed in vacating the ALJ's award and making its own findings of fact and conclusions of law. Therefore, we cannot ascertain whether, in rendering its decision, the appellate division applied the amended version of OCGA § 34-9-103 (a) as the standard of review, rather than the de novo review applicable under the former version of the statute. "Accordingly, we reverse and remand the case to the superior court with directions that the case be recommitted to the appellate division of the Board for review under the proper standard as set forth in this opinion." (Citation and punctuation omitted.) *Engram*, supra at 291; *Smith*, supra at 683.

*Judgment reversed and case remanded with directions. Birdsong, P. J., and Johnson, J., concur.*

264

*Savell & Williams, John M. Williams, Silvia L. Simpson*, for appellants.

*Larry G. Conner*, for appellee.