A97A0862, A97A1109. LOGAN v. ST. JOSEPH HOSPITAL et al.;
and vice versa.
(490 SE2d 483)

BEASLEY, Judge.

In Case No. A97A0862, Priscilla Logan appeals from the trial court's order reversing a State Board of Workers' Compensation's decision that she was entitled to psychological treatment as workers' compensation. In Case No. A97A1109, St. Joseph Hospital and its agent Alexsis, Inc. (collectively the "hospital") appeal the trial court's denial of their motion to dismiss Logan's appeal. Refusal to dismiss the appeal was appropriate, and Logan's appeal has merit.

*Case No. A97A1109*

1. The employer hospital's ground for dismissal of its employee Logan's appeal was that Logan delayed 91 days in paying the costs for the record. Based on the evidence and arguments received at a hearing, the trial court found that Logan was likely to be destitute and living with various family members and therefore difficult to contact despite her counsel's repeated efforts. Her counsel was required to leave messages with various relatives in order to communicate with her. The court also accepted counsel's contention that Logan suffered from a psychological condition (evidence of which is contained in the testimony to the ALJ set forth below) that precluded her from understanding the nature of the proceedings and that in fact had led her to believe that her appeal had already been won. These circumstances led the trial court to find that the delay in paying the costs was not unreasonable nor inexcusable. On appeal, the hospital claims the trial court abused its discretion in making these findings.

OCGA § 5-6-48 (c) provides that "the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence." " ' "The cause for delay in the processing of the appeal is a fact issue for determination in the trial court," and in making that determination the trial court exercises a broad legal discretion which is subject to appellate scrutiny only for abuse. [Cits.]' " *Miller v. Ingles Market,* 214 Ga. App. 817, 818 (449 SE2d 166) (1994).

The hospital disputes the findings of the trial court and argues that "Logan presented no response or affidavit in opposition to [the hospital's] motion [and] [t]here has been no evidence proffered by appellee Logan to explain the delay in payment of costs." The record before the ALJ contains extensive testimony as to Logan's psychological condition, and the court heard other evidence and arguments of Logan at a hearing which was not transcribed. " 'In the absence of a transcript, we must assume that the trial court's findings were supported by the evidence.' [Cit.]" *Intl. Indem. Co. v. Saia Motor Freight Line,* 223 Ga. App. 544, 547 (3) (478 SE2d 776) (1996). Because the burden is on the hospital to show error from the record, the hospital's argument fails. See *Studard v. Dept. of Transp.,* 219 Ga. App. 643, 644 (1) (466 SE2d 236) (1995).

*Leonard v. Ognio,* 201 Ga. App. 260 (410 SE2d 814) (1991), which reversed the trial court for abuse of discretion and dismissed the appeal, is distinguishable. *Leonard* cited the rule that a delay in paying costs in excess of 30 days is prima facie unreasonable and inex-

cusable. The 43-day delay in that case required a dismissal because of "the absence of any evidence as to why the delay occurred." Id. at 262. The only evidence submitted by the appellants in opposition to the motion to dismiss the appeal in *Leonard* was the affidavit of their attorney that he had forwarded the bill of costs to appellants with a request that a check be forwarded to him, and the affidavit of one appellant stating he had not received the letter and bill. Noting that appellants' counsel had knowledge of the circumstances necessary to prevent an unreasonable and inexcusable delay, counsel's single failed attempt to communicate with his clients was insufficient to explain the delay.

Priscilla Logan's case is substantially different in at least four respects. First, the trial court conducted an evidentiary hearing to determine whether Logan could rebut the prima facie presumption of unreasonableness and inexcusability. As explained earlier, there is no transcript, so we must assume the trial court's findings of reasonableness and excusability were supported by the evidence. *Intl. Indem. Co.*, supra; *Getz Exterminators v. Walsh*, 124 Ga. App. 402 (184 SE2d 358) (1971) (absent a transcript of hearing, appellate court "cannot say that the trial judge abused his wide discretion" in finding that failure to respond timely to discovery was due to providential cause). In *Leonard* the trial court considered only two written affidavits. " 'If a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a nondeferential standard.' [Cit.]" *Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 150 (1) (460 SE2d 516) (1995). Thus, in *Leonard*, we considered the affidavits anew in determining reasonableness and excuse.

Second, Logan's condition, which included both financial and mental disability, helped explain counsel's difficulty in contacting her and in accomplishing in a prompt fashion the payment of record costs. There were no such disabilities in *Leonard*. Third, counsel in *Leonard* sent a single letter to the clients with no follow-up. Fourth, there were no circumstances in *Leonard* regarding the appellants' personal condition and circumstances which may have confused them as to the status of the appeal.

In view of the evidence underlying the trial court's fact findings, the trial court did not err as a matter of law in finding a sufficient basis for overcoming the rebuttable presumption of unreasonableness and inexcusability where more than 30 days had elapsed before payment of costs. It was not an abuse of discretion to weigh the equities of dismissing versus proceeding in light of the facts and to give justice larger place. See *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 711 (1) (320 SE2d 784) (1984); *Compher v. Ga. Waste*

*Systems*, 155 Ga. App. 819, 820-821 (1) (273 SE2d 200) (1980).

### Case No. A97A0862

2. Logan enumerates as error the superior court's reversal of the Board's fact findings in her favor. She argues that had the superior court applied the "any evidence" standard, it would have affirmed the Board's ruling. OCGA § 34-9-105 (c) (4).

In May 1990, Logan, an employee of the hospital, injured her neck while lifting a trash bag. Dr. Reynolds, a neurosurgeon, has treated her since that time for a cervical or muscle strain. The parties stipulated that the injury was compensable under workers' compensation and the hospital has paid and continues to pay for the medical bills of Dr. Reynolds. In 1992 Logan's income benefits ceased based on a finding of the ALJ and of the Board that she could return to work.

In March 1992 Dr. Adams, a licensed psychologist, evaluated Logan in connection with a disability determination by the Social Security Administration. Dr. Adams diagnosed Logan as suffering from chronic pain syndrome and major or severe depression. He recommended that she receive psychotherapeutic treatment, to which Dr. Reynolds later agreed. Because Dr. Reynolds believed there was no biological basis for Logan's continued pain from the neck injury, he thought that Logan was suffering from a personality disorder which he termed a hysterical reaction to the neck injury and which he believed could be treated by Dr. Adams. Accordingly, Dr. Reynolds referred Logan to Dr. Adams for psychological evaluation and treatment. The hospital refused to pay Dr. Adams' treatment. Six months later Dr. Reynolds renewed his request that Dr. Adams treat Logan "with appropriate psychotherapy modalities in an effort to combat her anxiety/depressive reactions which are associated with chronic neck pain." When the hospital again refused to pay, Logan obtained a hearing before an ALJ, who heard Logan's testimony live and received into evidence the depositions of Drs. Reynolds and Adams.

In July 1994, the ALJ denied Logan's request for treatment, holding that "the weight of the evidence is not sufficient to establish that any treatment to be provided by Dr. John Adams would be related to the employee's prior job injury, nor would it be reasonable and necessary to effect a cure, give relief and return this employee to suitable employment." He found that "Dr. Reynolds has been unable to find anything objective to confirm the existence of constant subjective pain; that Dr. Reynolds feels that she should return to some suitable work which she has not; that other doctors consulted by Dr. Reynolds have also been unable to find anything physical that would confirm the employee's complaints of pain; that the employee saw Dr.

Adams on four occasions earlier and testified that he did not help her deal with her pain and in February 1994 she did not think that she needed to return to see Dr. Adams; that Dr. Adams has no definable plan of treatment for the employee and is not sure of her medical diagnosis; that Dr. Adams did not consider the MMPI performed at [the Medical College of Georgia] which shows an exaggeration of symptoms by the employee."

Logan appealed to the appellate division of the State Board of Workers' Compensation, which considered the evidence de novo. OCGA § 34-9-103 (a) (former version). In December 1994 the appellate division issued a decision reversing the decision of the ALJ and finding that based on Dr. Reynolds' testimony, Logan "has a personality disorder which causes her pain to be prolonged and makes her feel more pain over longer periods of time than the average person," and that she would benefit from treatment from Dr. Adams. The appellate division found further that Dr. Adams had not yet treated Logan but had simply evaluated her one time for social security purposes, and that treatment by Dr. Adams "is a sequela of her original injury."

The hospital appealed to the superior court, which in February 1995 remanded the case to the appellate division to make specific findings for its conclusion that the treatment was related to the original injury. OCGA § 34-9-105 (d). The following January, the appellate division, reciting the history of the case and noting that in July 1994 it had conducted a de novo review, applied the new standard of review mandated by OCGA § 34-9-103 (a) as amended effective July 1, 1994 (see Ga. L. 1994, p. 887, § 8) and found that "the findings of fact and conclusions of law of [the ALJ] are not supported by a preponderance of the competent and credible evidence contained in the record."

Adopting anew the findings set forth in its December 1994 order, the appellate division noted several errors in the ALJ's order, including his conclusion that Dr. Adams had treated Logan (in fact he had only evaluated, not treated, her one time); his reasoning that treatment was not warranted because Dr. Adams did not have a treatment plan (Dr. Adams had no treatment plan because he did not yet have permission to treat her); and his reliance on Dr. Reynolds' testimony that it was inconceivable that Logan four years later still suffered physical effects from the injury (Dr. Reynolds opined that Logan's pain was prolonged by her personality disorder). Citing credibility problems in Dr. Reynolds' testimony (including his misunderstanding that Logan had received psychological treatment and not benefited therefrom) and his repeated referral of Logan to Dr. Adams for treatment of her chronic pain disorder, the appellate division found that although Logan's work injury did not cause her mental

disability, "it is part of the reason for its continuation." It then concluded that, because "the employer takes the employee as it finds her," the employee's continued problems with severe pain are compensable.

On appeal, the superior court reversed the appellate division, holding that it had improperly used a de novo standard of review in its January 1996 decision. Finding that the ALJ's original findings were supported by a preponderance of the competent and credible evidence, the court reinstated the ALJ's decision and denied Logan's claim for psychological treatment. Discretionary appeal was granted by this Court.

Prior to July 1, 1994, OCGA § 34-9-103 had authorized the Board to conduct a de novo review and even to take additional evidence if desired. As amended, the statute now reads that "the appellate division [of the Board] shall review the evidence and shall then make an award with findings of fact and conclusions of law. . . . The findings of fact made by the administrative law judge in the trial division shall be accepted by the appellate division where such findings are supported by a preponderance of competent and credible evidence contained within the records." Ga. L. 1994, p. 887, § 8. As judicially construed, the statute means that "the appellate division must weigh the evidence and assess the credibility of witnesses and if it determines that the award of the ALJ is supported by a preponderance of admissible evidence, it will be accepted. But, if after assessing the evidence of record, the appellate division concludes that the award does not meet the statutes' evidentiary standards, the appellate division may substitute its own alternative findings for those of the ALJ, and enter an award accordingly. [Cits.]" *Bankhead Enterprises v. Beavers*, 267 Ga. 506, 507 (480 SE2d 840) (1997). See *AT&T v. Cotten*, 222 Ga. App. 261, 263 (474 SE2d 102) (1996); *Bennett-Murray, Inc. v. Barnes*, 222 Ga. App. 137, 138-139 (1) (473 SE2d 166) (1996). Evaluating the competency and credibility of the evidence, the appellate division performs a "hybrid review function" and decides whether the greater weight lies with the ALJ's findings. *T. V. Minority v. Chaffins*, 223 Ga. App. 495, 498 (479 SE2d 373) (1996) (Beasley, C. J., concurring specially). If so, it must accept them; if not, it can substitute its own findings. Id. at 497.

Here the appellate division, noting the incredulity and inconsistency of the evidence and reasoning relied upon by the ALJ, expressly found in its January 1996 decision that the ALJ's findings of fact and conclusions of law were "not supported by a preponderance of the competent and credible evidence." Based on a reasoned analysis of the evidence, the appellate division made its own findings and concluded that the proposed treatment related to the original compensable injury. The reference to "de novo review" in the first

paragraph of its decision was nothing more than a historical note that in its December 1994 decision it had erroneously used that standard. The superior court erred in holding that the appellate division followed the wrong standard of review.[1]

3. The superior court also erred in failing to apply the "any evidence" standard to its review of the appellate division's decision. OCGA § 34-9-105 (c) (4) allows the trial court to set aside the appellate division's findings of fact only if "[t]here is not sufficient competent evidence in the record" to support those findings. See *Bankhead Enterprises*, supra at 508; *Bennett-Murray, Inc. v. Barnes*, supra at 139.

" ' "In reviewing a workers' compensation award, both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board." . . . (Cits.)' [Cit.]" *Atlas Automotive v. Wilson*, 225 Ga. App. 631, 633 (484 SE2d 669) (1997). See also *Southwire Co. v. George*, 266 Ga. 739, 742 (470 SE2d 865) (1996); *Waffle House v. Padgett*, 225 Ga. App. 144, 146 (483 SE2d 131) (1997). In reviewing the appellate division's decision, the superior court must follow the "any evidence" standard even when the appellate division has found that the ALJ's findings were not supported by a preponderance of the evidence and has substituted its own findings. See *Bankhead Enterprises*, supra; *Bennett-Murray, Inc.*, supra; *Shuman v. Engineered Fabrics*, 220 Ga. App. 636, 637 (1) (469 SE2d 847) (1996); *Sutton v. B&L Express*, 215 Ga. App. 394, 395 (1) (450 SE2d 859) (1994).

There is ample evidence to support the appellate division's finding that the ALJ's findings on causation and need for treatment were not supported by a preponderance of the evidence.[2] Logan herself testified that her prolonged pain was related to her neck injury and that she felt Dr. Adams could help her. See *Metro Interiors v. Cox*, 218 Ga. App. 396, 398 (461 SE2d 570) (1995) ("appellate division [may] accept

---

[1] Even if the appellate division had claimed it was engaging in a de novo review in its January 1996 decision, this error may not have been fatal if all the appellate division did was substitute "its findings for those of the ALJ to the extent it determined that the ALJ's findings were unsupported by credible evidence." *Harrell v. City of Albany Police Dept.*, 219 Ga. App. 810, 811-812 (1) (466 SE2d 682) (1996). But see *AT&T v. Cotten*, supra (case remanded where court could not discern standard used).

[2] The evidence also supported the other findings of the appellate division discrediting the ALJ's findings. For example, the evidence showed that Dr. Adams has never treated Logan; Logan desired to be treated by Dr. Adams; Dr. Adams did consider the MMPI performed by the Medical College of Georgia; and Dr. Adams did not develop a treatment plan for Logan because he did not have authorization to treat her.

the testimony of the claimant over that of a medical expert"); *Bennett-Murray, Inc.*, supra at 138-139 (appellate division may credit one witness over another contrary to findings of ALJ).[3] Dr. Adams testified similarly. Dr. Reynolds had continuously treated Logan since the injury originally occurred for the pain associated therewith, and had seen no improvement over the years. Dr. Reynolds told Logan her pain related back to the original injury and opined that Logan's personality disorder, which may have pre-existed the injury, was prolonging the pain she continued to experience as a result of the injury and that she would benefit from treatment by Dr. Adams. Dr. Adams testified similarly.

Assuming Logan's present pain is purely a psychic condition, it is covered by workers' compensation. "[I]t has long been the rule in this state that a psychological injury or disease is compensable if it arises ' "naturally and unavoidably" ' . . . from some discernible physical occurrence.' [Cits.]" *Southwire Co.*, supra at 741. See *Atlas Automotive*, supra (major depressive disorder compensable); *Hanson Buick v. Chatham*, 163 Ga. App. 127 (292 SE2d 428) (1982) (psychic injuries arising out of physical injury compensable); *Howard v. Superior Contractors*, 180 Ga. App. 68, 69-70 (1) (348 SE2d 563) (1986) (post-traumatic stress syndrome compensable). Although the psychic injury must relate back to the physical injury, "[t]he physical injury need not be the precipitating cause of the psychic trauma; it is compensable if the physical injury contributes to the continuation of the psychic trauma." *Southwire Co.*, supra at 741-742. Compare *Williams v. ARA Environmental Svcs.*, 175 Ga. App. 661 (334 SE2d 192) (1985) (psychic trauma stimulated by psychic stimulus not compensable). Even though the employee's psychic condition pre-existed the physical injury, " 'there is a presumption that an employer takes an employee as he finds him,' that is, with his existing health conditions." *A&P Transp. v. Warren*, 213 Ga. App. 60, 63 (443 SE2d 857) (1994). See *Lumbermen's Mut. Cas. Co. v. Griggs*, 190 Ga. 277, 289 (9 SE2d 84) (1940); *Colonial Stores v. Hambrick*, 176 Ga. App. 544, 546 (3) (336 SE2d 617) (1985).

*Atlas Automotive*, supra, approximates the facts of this case. Months after the employee injured his lower back at work, the treating physician determined there was no physical basis for the employee's continued pain and he referred the employee for psychiat-

---

[3] The appellate division should give some level of "deference to the ALJ's decision on credibility where such decision is based on seeing and hearing the witnesses. This handicap must be taken into account as a significant factor when the board judges the credibility of competent evidence when performing its hybrid review function." *T. V. Minority v. Chaffins*, supra (Beasley, C. J., concurring specially). Here the primary testimony on causation and need for treatment is found in Dr. Reynolds' testimony, which the ALJ received by deposition.

ric counseling. The employer refused to pay for the treatment. The employee saw a psychiatrist nevertheless, who diagnosed the employee as having a major depressive disorder and recommended counseling. The employer again refused to pay for counseling and also suspended the employee's income benefits. We upheld the findings of the appellate division that the employee's physical back injury contributed to the continuation of his psychological disorder of major depression and chronic pain, and that therefore income benefits and payment for psychiatric treatment were mandated. We also affirmed the superior court's assessment of a $500 civil penalty against the employer for refusing to authorize psychiatric treatment.

Under the "any evidence" standard, the superior court was bound to affirm the appellate division's findings that Logan's physical neck injury contributed to the continuation of her major depression and chronic pain syndrome and its conclusion that the hospital must pay for the requested psychological treatment. Our holding requires reversal of the judgment and remand for a new judgment consistent herewith. Logan's second enumeration of error is moot.

*Judgment affirmed in Case No. A97A1109. Judgment reversed in Case No. A97A0862. McMurray, P. J., concurs. Smith, J., concurs in the judgment only.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997.

*Victor Hawk*, for appellant.
*Hull, Towill, Norman & Barrett, Neal W. Dickert, Floyd M. Taylor, Nancy S. Gentry*, for appellees.