A96A2477. ST. JOSEPH'S HOSPITAL, INC. et al. v. COPE.
(484 SE2d 727)

ANDREWS, Chief Judge.

The application of employer St. Joseph's Hospital, Inc. (Hospital) and its servicing agent was granted to consider the superior court's affirmance of the award of attorney fees to Cope in her workers' compensation case. We affirm.

Cope worked as a nursing assistant for the Hospital until July 2, 1992. On that date, she hurt her right upper extremity while lifting and pulling patients into and out of bed. She was treated by Dr. Wheeler, an orthopedist, beginning on July 21, 1992, after treatment in the emergency room did not alleviate her condition.

Dr. Wheeler's office notes and deposition reflect that he treated Cope for lateral epicondylitis, an inflammation of an elbow tendon, with injections, anti-inflammatories, and physical therapy. Although Dr. Wheeler deposed that this condition does not usually progress to neuropathy, he acknowledged that his office exam notes of September 23, 1992, reflect his concern with pain in her "hand, wrist and forearm" for which he referred her to Dr. Stanley, a neurologist, for evaluation. This evaluation resulted in a diagnosis of "mild or moderate carpal tunnel syndrome," a neuropathic disorder.

She continued to be treated by Dr. Wheeler as well as other medical providers for carpal tunnel syndrome, including a surgical release of her right wrist in November 1992, performed by Dr. Wheeler. Thereafter, her right arm pain improved, but some swelling and pain continued. In January 1993, Dr. Wheeler noted complaints with Cope's left hand which Cope attributed to overuse of that hand when she attempted to return to work after injuring her right arm. In May 1993, Cope was referred to Dr. Downing, a neurologist, for further evaluation of her carpal tunnel syndrome. After conducting further tests, Dr. Downing opined that the "repeat EMG shows

marked improvement of her carpal tunnel [right wrist] consistent with a therapeutic benefit. Certainly with the findings on exam, electrical and radiological studies do not suggest that she is disabled. I see no reason why this lady cannot return to work and do the type work she does. I have encouraged her to do so. The exercise at work will be beneficial to her. I do not think that further medical therapy is indicated at this time."

In July 1993, Dr. Wheeler referred Cope to a pain specialist, recommended she return to work, noted he could find no physiologic explanation for her pain or inability to work, but also noted her continuing complaints of arm pain in both arms.

Cope continued to be seen by neurologists and orthopedists, who were compensated by workers' compensation, including Dr. Wheeler, about both wrists, both of which were repeatedly diagnosed with and treated for carpal tunnel syndrome. On January 23, 1995, Dr. Wheeler wrote a letter to the Hospital's servicing agent in which he described the right wrist release he had performed and noted that Cope continued to have symptoms, with her left wrist worsening and "the right has showed some worsening as well after the release. As far as whether or not this is related to her job injury on 7/3/92, I think that *the right carpal tunnel syndrome was certainly related to that*, but she has not worked since 1992 and I find it very difficult to apply a job injury that happened in 1992 to a recent exacerbation of some left wrist carpal tunnel syndrome." (Emphasis supplied.) Dr. Wheeler wrote another letter on January 30, also stating that the right carpal tunnel was continuing to be a problem.

During his deposition of March 20, 1995, Dr. Wheeler, for the first time, took the position that her carpal tunnel syndrome was not related to her 1992 injury. He explained that he had changed his mind and, "after my review of this patient's history, I don't feel like I made the correct assessment that a right carpal tunnel syndrome was related to this injury."

The Hospital had unilaterally suspended income benefits on August 4, 1993 (Rule 61 (b) (2)), based on Dr. Wheeler's release of Cope to return to work and Dr. Downing's concurrence. The Hospital also filed WC-3s on December 18, 1994 and March 28, 1995, controverting Cope's right to continued medical treatment and disability payments as to both arms because the current condition was not related to her July 1992 on-the-job injury. Because Cope had not returned to work, the pending claims were treated as change of condition claims, with the Hospital bearing the burden of proof. *West Point Pepperell v. Adams*, 152 Ga. App. 3, 4 (2) (262 SE2d 212) (1979).

The appellate division found that Cope was entitled to "the assessment of attorney fees. OCGA § 34-9-108 (b) (1). The employer/self-insurer defended this claim at least partially without reasonable

grounds." This conclusion is apparently premised on paragraph 20 of the appellate division's finding of fact that "Dr. Wheeler's deposition testimony is unreliable. Dr. Wheeler treated the employee for a period of approximately two and one half years without ever contending that the right upper extremity problems were not related to the original injury. In fact, Dr. Wheeler specifically stated in his letter of January 23, 1995, that the right carpal tunnel syndrome was 'certainly related' to the original injury. His deposition testimony is inconsistent with his treatment and opinions during his term of care of the employee. Therefore, the appellate division finds that Dr. Wheeler's previous reports and letters are more persuasive than his deposition testimony."

The superior court affirmed, finding that the appellate division had considered and made findings concerning the employer's defense but had determined that the employer's reliance on "these somewhat isolated pieces of medical evidence [was] unreasonable."

1. "On appeal from an award of the State Board of Workers' Compensation, this Court examines the record to see if there is competent evidence in the record to support the award and construes the evidence in a light most favorable to the prevailing party. *Harris v. Seaboard Farms of Elberton*, 207 Ga. App. 147, 149 (427 SE2d 524) (1993). In addition, '(a) correct decision of a trial court will not be reversed, regardless of the reasons given therefor.' (Citations and punctuation omitted.) *Watts v. Wayne County Bd. of Ed.*, 201 Ga. App. 777, 779 (412 SE2d 541) (1991)." *Lukowski v. Capitoline Products*, 222 Ga. App. 140, 142 (1) (473 SE2d 236) (1996).

2. "OCGA § 34-9-221 contemplates three different time periods within which an employer/insurer can file a notice to controvert liability for workers' compensation benefits. Subsection (d) of OCGA § 34-9-221 provides that the employer's/insurer's initial notice to controvert is to be filed 'on or before the twenty-first day [Rule 61 (b) (1)] after knowledge of the alleged injury or death. . . .' However, this provision is clearly inapplicable . . . , because the employer/insurer did not file such a timely initial notice to controvert liability but, instead, voluntarily initiated payment of benefits to the employee without an award. When, as in the present case, the payment of benefits has already been initiated without an award, it is not subsection (d) but subsection (h) of OCGA § 34-9-221 that is the applicable provision. Within that single provision, two different time periods for the employer/insurer to controvert are established. 'Where compensation is being paid without an award, the right to compensation shall not be controverted except upon the grounds of change in condition or newly discovered evidence unless notice to controvert is filed with the board within 60 days of the due date of first payment of compensation.' OCGA § 34-9-221 (h). . . . [T]his portion of OCGA § 34-9-221

(h) is also inapplicable . . ., because the employer/insurer did not file a timely notice to controvert within 60 days of the due date of their first voluntary payment. . . . What is the applicable provision here is that portion of OCGA § 34-9-221 (h) which provides that, after the passage of 60 days from the due date of the first payment of compensation made without an award, the employer/insurer 'shall not' controvert liability 'except upon the grounds of change in condition or newly discovered evidence. . . .' " *Carpet Transp. v. Pittman*, 187 Ga. App. 463, 464-465 (1) (370 SE2d 651) (1988). See *Cartersville Ready Mix Co. v. Hamby*, 224 Ga. App. 116, 118 (2) (479 SE2d 767) (1996).

These time periods serve as a statute of limitation with regard to the employer/insurer's right to dispute the compensability of the claim. *Cartersville Ready Mix Co.*, supra; *Snapper Power Equip. Co. v. Crook*, 206 Ga. App. 373, 374 (425 SE2d 393) (1992); *Carpet Transp.*, supra.

3. "While the question of whether there are reasonable grounds for resisting an award of compensation is an issue of fact to be determined by the board, attorney fees may not be awarded where the matter is closely contested on reasonable grounds. *Brigmond v. Springhill Homes of Ga.*, 180 Ga. App. 875, 876 (350 SE2d 846) (1986). Further, the board does not satisfy its burden of proving that a defense is unreasonable by setting forth its own separate basis for the award. Rather, the board must prove by the record that there is ' "evidence upon which to base a finding of unreasonableness with respect to the employer's defense of a claim." ' (Citation and punctuation omitted.) *Pet, Inc. v. Ward*, 219 Ga. App. 525, 527 (466 SE2d 46) (1995)." *Autry v. Mayor &c. of Savannah*, 222 Ga. App. 691, 692-693 (475 SE2d 702) (1996).

The Hospital/agent's argument here and below was that, solely based upon Dr. Wheeler's change of opinion in 1995 regarding causation of the carpal tunnel syndrome, after he had treated Cope for three years for the right arm epicondylitis and superadded carpal tunnel syndrome in both arms, the termination of benefits and pursuit of the change of condition ruling was "reasonable" based upon *Pet, Inc.*, supra; *Brigmond*, supra; and *S. S. Kresge Co. v. Driver*, 147 Ga. App. 531 (249 SE2d 340) (1978).

In *Pet, Inc.*, however, the employer had consistently contested whether Ward's September 1992 episode of back pain was work-related, contending that the exacerbation of her previous work-related back injury occurred while she was laid off from work in May 1992. There was evidence to support this contention from both Ward and her treating physicians. We concluded that the ALJ completely ignored the evidence supporting Pet's defense. *Pet, Inc.*, supra at 526. In *Brigmond*, the evidence was that the treating physician was of the opinion that the employee was not so disabled that he could not

return to light-duty work and that the employment offered by the employer was suitable. This Court affirmed the superior court's finding that, based on conflicting medical opinions by different doctors, the defense was reasonable.

In the present case, there was originally no timely contention by filing a notice to controvert (Rule 61 (b) (1)) by the Hospital that Cope's injuries, including the superadded carpal tunnel syndrome, were not work-related, only that, in July 1993, she had improved enough to return to work. Then, upon Dr. Wheeler's change of opinion in May 1995, in effect, the Hospital attempted to contest compensability of Cope's carpal tunnel syndrome under the rubric of a change in condition. *Richardson v. Air Products &c.*, 217 Ga. App. 663, 665 (458 SE2d 694) (1995).

Compare *Autry*, supra, where this Court affirmed the superior court's conclusion that attorney fees were not demanded because the board overlooked two of the three bases upon which the city contested the treatment of occupational therapy. There, the city controverted treatment on the grounds it was not likely to effect a cure, previous physical therapy had been unsuccessful, and that the prescribed therapy was due to an unrelated condition. The city did not attack the compensability of the underlying 1991 left elbow problems. Autry had gone to Dr. Novack for treatment of her elbow in April 1994, and he recommended occupational therapy " 'to help with carpal tunnel syndrome, reported to be more severe on (her) right side.' " Id. at 692. In June 1994, prior to the controvert, Dr. Novack's own notes reflected that the therapy had not been effective and had to be stopped because of Autry's complaints of pain. Dr. Novack was also unaware that another doctor had earlier prescribed another unsuccessful round of therapy for pain in Autry's shoulders and arms. Therefore, the city's controvert on the grounds the therapy was unlikely to help and was unsuccessful was reasonable.

There were no such contentions in this case, and the trial court's affirmance of the imposition of attorney fees by the appellate division on the ground that solely relying on Dr. Wheeler's change of mind was not reasonable is affirmed.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 14, 1997 —
RECONSIDERATION DENIED MARCH 28, 1997 — 

*Howard & Whatley, Molly M. Howard, Thomas G. Whatley, Jr.,* for appellants.

*Zipperer & Lorberbaum, Ralph R. Lorberbaum*, for appellee.