A02A1759. PRINTPACK, INC. et al. v. CROCKER.

(579 SE2d 225)

JOHNSON, Presiding Judge.

We granted the application for discretionary appeal in this workers' compensation case to determine whether the employer/insurer unreasonably failed to begin timely payment of permanent partial disability (PPD) benefits,[1] and was thus properly assessed attorney fees and a penalty. To resolve this issue, we must determine whether a workers' compensation claimant, who has suffered loss of a body member by amputation, must demonstrate maximum medical improvement (MMI) before he is entitled to PPD benefits, and whether the employer/insurer may be assessed attorney fees and penalties for its refusal to pay PPD benefits before this claimant has reached MMI. Because OCGA § 34-9-263 (c) unequivocally requires the employer/insurer to pay PPD benefits for a specified number of weeks for loss of the body members listed therein — and amputation indisputably represents "loss" of the affected member — we hold that the claimant is not required to show MMI in such a case. We also hold that the State Board of Workers' Compensation (Board) was authorized to find that the employer/insurer's refusal to pay until the claimant reached MMI was unreasonable and thus to assess attorney fees and a penalty.

On July 23, 2000, Charlie Joe Crocker's left hand was pulled into and crushed by a roller press machine that he was operating for Printpack, Inc.[2] His injuries required emergency surgery resulting in the total amputation of his left index finger and a debridement and partial amputation of his severely damaged left thumb. Printpack and its insurer accepted the claim as compensable. As a result of his injury, Crocker was unable to work for about a month, and he received temporary total disability (TTD) benefits[3] for this period.

Noting that Crocker showed continued improvement, his physician returned him to work with light duty restrictions on August 25, 2000. Printpack provided Crocker with light duty work, but paid him at his pre-injury rate or higher. Printpack and its insurer in turn suspended Crocker's TTD benefits.

Printpack's insurer wrote Crocker, informing him that he was entitled to no other workers' compensation benefits. Crocker telephoned the individual who signed the letter to determine why he was not eligible for PPD benefits. She informed him that he would only have been eligible for PPD benefits if he had lost his entire thumb. In

---

[1] See OCGA § 34-9-263.

[2] Hereinafter, references to "Printpack" also refer to its insurer, Travelers Insurance Company, as applicable.

[3] See OCGA § 34-9-261.

response, Crocker hired an attorney who filed a claim on his behalf on September 20, 2000, seeking PPD benefits, the assessment of attorney fees, and a penalty under OCGA § 34-9-221 (e). Crocker also sent a letter to the insurer with a picture showing the extent of the amputations to his left hand.

Crocker was released to regular work without restrictions on September 20, 2000. At this time, his treating physician noted that Crocker's range of motion was near full.

Crocker's treating physician issued a report on December 27, 2000, stating that Crocker had reached MMI and assigned him a disability rating.[4] Printpack began paying PPD benefits to Crocker on January 5, 2001. However, Crocker continued to prosecute his claim for attorney fees and penalties, alleging Printpack failed to timely pay PPD benefits.

At the hearing, Printpack contended that it had fully complied with OCGA § 34-9-263 and Board Rule 263, and thus an award of attorney fees and penalties would be improper. But the administrative law judge (ALJ) noted that Board Rule 263 provides that within 30 days after an employee is entitled to PPD benefits, the employer/insurer must have the employee's injured body rated for disability pursuant to the applicable American Medical Association guidelines, furnish a copy of the report to the employee, and commence payment to the employee within 21 days after knowledge of the disability rating.

The ALJ held that because Crocker returned to work at full pay on August 25, 2000, he was at that time entitled to receive PPD benefits, and that it was not important whether he had reached MMI because the amount of loss of body parts (his index finger and the first knuckle of his thumb) was established on July 23, 2000, the date of his injury and emergency surgery. The ALJ concluded that Printpack thus had 30 days from that date to have Crocker rated for disability and another 21 days, after receiving knowledge of the rating, to begin payments of PPD benefits. In reaching its conclusion, the ALJ noted that "it appears that employer/insurer does not want to comply with the first part of Board Rule 263 requiring the rating within 30 days, and yet rely upon another portion of the Rule which would give them 21 days to pay after knowledge of the rating." The ALJ then awarded Crocker attorney fees on the basis that Printpack violated Board Rule 263, its defense of the claim was unreasonable, and it failed to pay PPD benefits timely. The ALJ also imposed a pen-

---

[4] Based on American Medical Association guidelines, Crocker's physician gave him a PPD rating of 40 percent to his thumb, 100 percent to his index finger, or 36 percent to the entire left hand (which is also a 32 percent disability rating of his upper extremity), and a 19 percent disability rating for the whole person.

alty against Printpack for the late payment of PPD benefits. Except for amending the percentage of penalty to be assessed, the appellate division fully affirmed the ALJ's award. Printpack appealed, and the superior court affirmed the award of the appellate division. This Court then granted Printpack's application for discretionary appeal from the superior court's order.

In three enumerations of error, Printpack essentially argues that the superior court erred in upholding the Board's determination that: (1) because Crocker suffered amputation of a body part listed in OCGA § 34-9-263 (c), he did not have to demonstrate MMI before becoming entitled to PPD benefits; (2) Crocker was eligible for PPD benefits as of August 25, 2000; (3) within 30 days of that day, Printpack was required to have Crocker's injured body member rated for disability under Board Rule 263; (4) Printpack's failure to do so, and its resulting failure to commence timely PPD payments, violated Board Rule 263; (5) Printpack's defense of the claim was unreasonable; and (6) Printpack was thus required to pay attorney fees and penalties to Crocker.

1. To recover PPD benefits under OCGA § 34-9-263, a claimant must have "disability partial in character but permanent in quality resulting from loss or loss of use of body members or from the partial loss of use of the employee's body."[5] In order to be entitled to these benefits, the claimant must show that the condition is "permanent,"[6] meaning, that it will not improve during his lifetime.[7] OCGA § 34-9-263 (c) requires the employer/insurer to pay to the employee weekly income benefits for a certain number of weeks for loss or loss of use of certain specified body parts. The number of weeks the employer/insurer must pay is determined by multiplying the percentage of bodily loss or loss of use by the maximum number of weeks for each specified body member. The maximum number of weeks an employer/insurer must pay for loss or loss of use of an index finger is 40,[8] and for a thumb is 60.[9] Thus, as in this case, where the claimant loses his entire index finger and 40 percent of his thumb, he is entitled to 40 weeks of PPD benefits for the index finger and 24 weeks for his thumb.

Printpack points to cases holding that the claimant must establish MMI before the amount of PPD benefits can be determined.[10] It insists that it relied on these cases in withholding PPD benefits to

---

[5] OCGA § 34-9-263 (a).

[6] *State of Ga. v. Birditt*, 181 Ga. App. 356, 357 (352 SE2d 203) (1986).

[7] See Kissiah, Georgia Workers' Compensation Law (2nd ed.), § 16.03 [1], citing Larson's Workers' Compensation Law, Ch. 80, § 80.04.

[8] OCGA § 34-9-263 (c) (6).

[9] OCGA § 34-9-263 (c) (5).

[10] *Birditt*, supra; *MARTA v. Powell*, 198 Ga. App. 811 (2) (402 SE2d 805) (1991).

Crocker, and that the ALJ's award creates confusion by eliminating the MMI requirement in these cases. But the MMI requirement is solely to establish permanency of the injury in *loss of use* cases. As here, where there is loss of a body member listed in OCGA § 34-9-243 (c) by amputation, the permanency of the loss is established by the fact of the amputation of the body part. There is no case holding that the claimant must demonstrate MMI where a body member scheduled in OCGA § 34-9-263 (c) has been amputated, and the reason is obvious, as this case demonstrates: Crocker's index finger and his thumb tip are not going to "improve." They are forever gone, and that is proof enough that the loss is "permanent in quality."[11] The Supreme Court's recent decision in *City of Poulan v. Hodge*[12] supports this conclusion. There, the Court held that MMI is not a legal condition precedent to receiving PPD benefits, even in a "loss of use" case; a finding of MMI is merely evidence that an injury is permanent.[13]

Printpack contends, however, that the amount of total damage to Crocker's hand — for example, the amount of nerve damage — could not be ascertained until Crocker reached MMI. Thus, it argues that even in an amputation case, only a physician can determine the full extent of Crocker's injuries and their permanence through determining whether and when Crocker has reached MMI. To hold otherwise, it argues, would place employers at risk of having paid an incorrect amount once MMI is established.

But the fact that Crocker may later establish that he has permanent injury in addition to the loss of his amputated fingers did not relieve Printpack from paying PPD for the loss of Crocker's fingers in the amounts specified in OCGA § 34-9-263 (c) at the time Crocker's TTD benefits ended. Should other permanent injury manifest later, Crocker may bring a claim for a change in condition in compliance with OCGA § 34-9-104 (b) to obtain additional benefits.[14]

We thus conclude that if a claimant suffers a compensable injury by loss of a body part scheduled in OCGA § 34-9-263 (c) through amputation, the claimant need not demonstrate that he has reached MMI before becoming entitled to PPD benefits.

2. We next turn to the issue of when Crocker was entitled to PPD benefits and whether Printpack was late in paying them. OCGA § 34-9-263 (b) (2) provides that the claimant is not entitled to PPD benefits until he is no longer entitled to either TTD or temporary partial

---

[11] OCGA § 34-9-263 (a).

[12] 275 Ga. 483 (569 SE2d 499) (2002).

[13] Id. at 484.

[14] *Birditt,* supra, citing *Davis v. Gen. Motors Corp.,* 166 Ga. App. 401 (304 SE2d 402) (1983).

disability (TPD) benefits. The applicable version of Board Rule 263 provides:

> Within 30 days after the employee is entitled to weekly benefits under subsection (c) of O.C.G.A. § 34-9-263, the employer/insurer shall have the employee's injured body member rated for disability pursuant to the "Guides to the Evaluation of Permanent Impairment, Fourth Edition[,]" published by the American Medical Association, furnish a copy of the medical report of rating to the employee, and commence payment not later than 21 days after knowledge of the rating. The employer/insurer are presumed to have knowledge of the rating not later than 10 days after the date of the report establishing the rating.[15]

In this case, Crocker's entitlement to TTD benefits ended when he returned to work at his full salary on August 25, 2000. The ALJ found that Crocker was entitled to PPD benefits on that day, but this is only the case if Crocker has shown that his injury is at that point "permanent in quality." As discussed in Division 1, the fact that Crocker lost his finger and part of his thumb through amputation demonstrates as a matter of law that his loss is permanent. Accordingly, within 30 days of August 25, 2000, Printpack was required to have Crocker's injured body members rated for disability. As the ALJ found, Printpack's failure to do so, and its resulting failure to begin timely PPD payments to Crocker, violated Board Rule 263.

Printpack, however, points to that portion of Board Rule 263 requiring that it begin payment "21 days after knowledge of the rating." It argues that it cannot be presumed to have knowledge that it did not in fact have, and that it could only have obtained knowledge of Crocker's disability rating *after* his physician had rated him for disability, in this case, on December 27, 2000. Printpack also points out that the only presumption relating to its knowledge of the disability rating is that Board Rule 263 presumes the employer/insurer to have knowledge of the rating within ten days of the date of the physician's report establishing the disability rating.

This argument begs the question. Printpack did not need to know what Crocker's ultimate disability rating was going to be once Crocker reached MMI, in order to begin payment of PPD benefits to Crocker. Printpack only needed to know that Crocker's finger and part of his thumb were amputated, and that he thus was entitled to

---

[15] Workers' Compensation Act, Title 34, Appendix, Rule 263, Determination of Disability Rating. The rule was revised July 1, 2001, by substituting "Fifth Edition" for "Fourth Edition" in the first sentence.

PPD benefits once his TTD benefits terminated under Board Rule 263. To reiterate, once a claimant is no longer entitled to TTD or TPD benefits and demonstrates permanency of his injury — through proof of MMI or loss by amputation or otherwise[16] — the employer/insurer has 30 days to have the claimant's injured body member rated for disability by a physician. Under Rule 263, the burden is on the *employer/insurer* to have the claimant evaluated and to begin making PPD payments within 21 days after knowledge of the rating. In this case, the ALJ properly found that Printpack's failure to have Crocker timely evaluated by a physician to obtain a disability rating constituted a violation of Rule 263, and resulted in Printpack's PPD payments to Crocker being untimely, which was also a violation of the rule.

3. Finally, we must determine if the Board was authorized to assess a penalty and attorney fees against Printpack.

(a) *Penalty.* OCGA § 34-9-221 (e) provides that, where there has been no award, as here, if the employer/insurer fails to pay income benefits when due, a 15 percent penalty will be assessed, unless the employer/insurer has controverted the claim or unless the Board excuses this nonpayment because the benefits could not be paid within the period prescribed. OCGA § 34-9-221 (e) is not discretionary: If the employer fails to comply with the Code section, a 15 percent penalty "shall" be assessed. Here, Printpack failed to pay PPD benefits to Crocker when due, as discussed in Division 2, it did not controvert the claim, and the Board did not excuse the nonpayment; thus, Printpack did not comply with OCGA § 34-9-221, and the Board properly assessed the 15 percent penalty under subsection (e).

(b) *Attorney Fees.* The Board is authorized to assess attorney fees under either OCGA § 34-9-108 (b) (1) or (2). Subsection (b) (1) provides that

> Upon a determination that proceedings have been brought, prosecuted, or defended in whole or in part without reasonable grounds, the administrative law judge or the board may assess the adverse attorney's fee against the offending party.

Whether an employer/insurer has defended against a claim without reasonable grounds presents an issue of fact for determination by the Board, and if there is any evidence to support the award, the superior court and this Court must affirm.[17] But the ALJ may not

---

[16] See *City of Poulan*, supra.

[17] *Richardson v. Air Products & Chemicals*, 217 Ga. App. 663, 665 (458 SE2d 694) (1995).

award attorney fees where the matter is closely contested on reasonable grounds.[18]

The ALJ did not specify which Code section it was awarding fees under, but it found that Printpack's defense of the claim was unreasonable in that it had not only refused to have a physician rate Crocker for disability after he went back to work on August 25, 2000, it waited 36 days after the hearing in the matter was scheduled to have Crocker rated. The ALJ found that this behavior, along with Printpack's violation of Board Rule 263, constituted an unreasonable defense of the claim. The ALJ was authorized to find that Printpack's actions were unreasonable in light of these circumstances, and the ALJ's findings support an award of attorney fees under OCGA § 34-9-108 (b) (1).

The ALJ also assessed attorney fees on the basis that Printpack failed to make timely PPD benefit payments to Crocker. OCGA § 34-9-108 (b) (2) provides that

> If any provision of Code Section 34-9-221, without reasonable grounds, is not complied with and a claimant engages the services of an attorney to enforce his or her rights under that Code section and the claimant prevails, the reasonable quantum meruit fee of the attorney, as determined by the board, and the costs of the proceedings may be assessed against the employer.

Whether noncompliance with OCGA § 34-9-221 is without reasonable grounds is, again, an issue of fact for Board determination, and this Court will affirm if there is any evidence to support it.[19] As stated, the ALJ found that Printpack unreasonably failed to have a physician rate Crocker's injury until over a month after he requested a hearing seeking PPD benefits, which resulted in Printpack making late PPD payments to Crocker. This is tantamount to a finding that Printpack unreasonably failed to comply with OCGA § 34-9-221. Moreover, Crocker was forced to engage an attorney to pursue his claim for PPD benefits after the insurer's agent misled him about his entitlement to those benefits. For these reasons, there was evidence to support the ALJ's decision to assess attorney fees against Printpack under OCGA § 34-9-108 (b) (2), as well.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

---

[18] *Brigmond v. Springhill Homes of Ga.*, 180 Ga. App. 875, 876 (350 SE2d 846) (1986).
[19] *Carr v. A. P. & Harry Jones Logging*, 198 Ga. App. 698, 699 (1) (402 SE2d 538) (1991).

DECIDED MARCH 5, 2003.

*Tisinger, Tisinger, Vance & Greer, Glenn M. Jarrell*, for appellants.

*Van C. Wilks*, for appellee.