A06A0908. BAYER CORPORATION et al. v. LASSITER et al.
(638 SE2d 812)

MILLER, Judge.

Charles Lassiter filed a claim with the State Board of Workers' Compensation (the "Board") seeking temporary total disability ("TTD") benefits, alleging that his disabling injury resulted from an automobile accident arising out of his employment. Prior to the adjudication of this claim, Mr. Lassiter committed suicide. His widow, Mary Lassiter, subsequently amended the claim to seek both the outstanding TTD benefits and the statutory death benefit, asserting that Mr. Lassiter's suicide resulted from his compensable injury. Mr. Lassiter's employer, Bayer Corporation ("Bayer"), and Bayer's insurance company, Pacific Employers Insurance Company ("Pacific") opposed

[26] *Deal v. State*, 241 Ga. App. 879, 882 (3) (528 SE2d 289) (2000).
[27] *Gooch v. State*, 249 Ga. App. 643, 647 (4) (549 SE2d 724) (2001).

both the original and amended claims on the grounds that Mr. Lassiter's disability resulted from a pre-existing disease, rather than the accident.

Following a hearing held after Mr. Lassiter's death, an administrative law judge ("ALJ") ruled in favor of the Lassiters, and that ruling was affirmed by the Board. Bayer and Pacific thereafter appealed the award to the Superior Court for Muscogee County, which affirmed the Board's decision. Bayer and Pacific allege that the evidence is insufficient to support the conclusion that Mr. Lassiter's suicide was a compensable injury. Discerning no error, we affirm.

> On appeal from an award of the State Board of Workers' Compensation, this Court examines the record to see if there is competent evidence . . . to support the award and construes the evidence in a light most favorable to the prevailing party. *Harris v. Seaboard Farms of Elberton*, 207 Ga. App. 147, 149 (427 SE2d 524) (1993).

*St. Joseph's Hosp. v. Cope*, 225 Ga. App. 781, 783 (484 SE2d 727) (1997). The question of whether the trial court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

Viewed in the light most favorable to Mr. and Mrs. Lassiter, the evidence shows that on March 20, 2001, while on a sales call in Columbus, Georgia, Mr. Lassiter was involved in an automobile accident. He suffered back and neck injuries, and later developed a constant ringing in his ears that his physicians labeled "post-traumatic tinnitis." The tinnitis eventually became so severe that it served as the basis of Mr. Lassiter's disability claim.

On December 8, 2002, Mr. Lassiter told his wife that he had "to do something" about the ringing in his ears. The following day, Mr. Lassiter shot himself with a rifle, and his death was ruled a suicide.

Prior to the accident, Mr. Lassiter had no history of significant medical problems. He had never complained of ringing in his ears, but such ringing started almost immediately after the accident. The onset of the tinnitis caused a personality change in Mr. Lassiter, and adversely impacted his judgment, causing him to do irrational things. Mrs. Lassiter testified that eventually her husband so doubted his own judgment that he "didn't want to make any decisions because he was afraid that they would be wrong."

Mr. Lassiter saw several physicians in an unsuccessful attempt to have his tinnitis treated. The lack of relief put Mr. Lassiter into what his wife described as a state of despair. The tinnitis eventually

became so severe that Mr. Lassiter would go outside and start his leaf blower, because that noise was the only thing that could drown out the ringing in his ears.

In support of her claim, Mrs. Lassiter submitted the expert report and deposition testimony of Dr. Michael Hilton, a psychiatrist, who had reviewed her husband's medical records and Mr. Lassiter's personal notes. Dr. Hilton testified that in his professional opinion Mr. Lassiter's suicide resulted from the tinnitis, and a "disturbance of the mind" caused by that disease. Specifically, Dr. Hilton testified that the ringing in Mr. Lassiter's ears caused a disturbance in his mind that so impacted his judgment that he deemed suicide preferable to living with the tinnitis. Despite the fact that Dr. Hilton looked for evidence of any other factors in Mr. Lassiter's life that could have contributed to his disturbance of the mind, he could find none.

Bayer and Pacific did not present any evidence to refute the testimony of Mrs. Lassiter or Dr. Hilton. Instead, they claim that the trial court failed to apply the correct legal standard in reaching its conclusion that Mr. Lassiter's suicide was a compensable injury.

Suicide is generally excluded from the Workers' Compensation Act ("WCA") as an "intentionally self-inflicted injury" under OCGA § 34-9-17 (a). This Court, however, has recognized that:

> suicide does not ipso facto preclude compensation where [the compensable] injury is its proximate cause; that is, where it is caused by severe pain and despair proximately resulting from the accident sufficient to cause a disturbance of the mind and the overriding of normal judgment to the extent that the act, although "purposeful" is found to be not "intentional."

*McDonald v. Atlantic Steel Co.*, 133 Ga. App. 157, 158 (2) (210 SE2d 344) (1974).

The ALJ and the Board both found that Mr. Lassiter's tinnitis resulted from the automobile accident. They further concluded that the tinnitis so deprived Mr. Lassiter of his normal judgment that his suicide could not be considered intentional. The trial court affirmed the award after finding that these conclusions were supported by the evidence.

On appeal, Bayer and Pacific argue that because the *McDonald* court used the term "proximate cause," the relevant question was whether the accident "proximately caused" Mr. Lassiter's suicide. They further argue that in addressing this question the trial court erred by failing to consider and apply this Court's decision in *Dry Storage Corp. v. Piscopo*, 249 Ga. App. 898, 900 (550 SE2d 419) (2001), which held that a suicide allegedly resulting from a tortfeasor's negligence is not viewed as a reasonably foreseeable consequence of that negligence.

The problem with this argument is twofold. First, it attempts to impose standards of tort law on a workers' compensation claim. Such an imposition would defeat the dual purpose of the WCA. OCGA § 34-9-1 et seq. The WCA was enacted "to alleviate the suffering of injured workers and their families by providing immediate and certain financial assistance, regardless of whether the injury resulted from the fault of the employer, as long as the injury arose out of and in the course of employment." *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993). The WCA also benefits employers by immunizing them from tort claims arising out of injuries suffered by a worker during the course of his employment. See OCGA § 34-9-11. This immunity protects employers from excessive damage awards and relieves them of liability for traditional tort claims such as loss of consortium and pain and suffering. See *Doss v. Food Lion*, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996) (The employers' immunity represents "the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation.").

Since injured workers and their employers are both burdened by the financial costs and the delay associated with traditional tort actions, the WCA was "enacted to avoid the evils which actions for torts had entailed." *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 2 (28 SE2d 280) (1943). To that end, the Act supplanted the common law of torts, so that an "employee need not show any fault on the part of the employer. The employer likewise may not defend the action by proving its lack of negligence, the employee's contributory negligence, or assumption of the risk." *Pardue v. Ruiz*, 263 Ga. 146, 148 (429 SE2d 912) (1993). In short, the WCA was deliberately designed to exclude traditional tort concepts such as negligence and causation, so long as the injury "arose out of and in the course of employment." See *Travelers Ins. Co. v. Southern Elec.*, supra.

In light of the purpose and design of the WCA, the question of whether Mr. Lassiter's suicide was a reasonably foreseeable result of his automobile accident is irrelevant to the current action. That issue would be relevant only in a wrongful death action brought against an alleged tortfeasor. Moreover, under *Piscopo*, any finding that Mr. Lassiter's suicide constituted an unforeseeable intervening cause would serve only to relieve the tortfeasor of liability; it would have no bearing on the question of whether Mr. Lassiter's death is compensable under the WCA.

The second problem with Bayer and Pacific's argument is that it misconstrues the *McDonald* court's use of the term "proximate cause." Under *McDonald*, the threshold question is whether the *tinnitis* (rather than the suicide) "proximately resulted" from the

accident. Having found that it was a compensable injury, *McDonald* then required the Board to determine whether the emotional and physical effects of the tinnitis caused Mr. Lassiter to be so devoid of his normal judgment that his conduct in taking his life could not be viewed as intentional under OCGA § 34-9-17 (a). The ALJ, the Board, and the trial court each answered that question affirmatively, and the evidence is sufficient to support this conclusion.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 9, 2006.

*Kissiah & Lay, Richard C. Kissiah*, for appellants.
*Deming, Parker, Hoffman, Green & Campbell, Franklin E. Parker*, for appellees.