A10A1814. MASTER CRAFT FLOORING et al. v. DUNHAM.
(708 SE2d 36)

DILLARD, Judge.

In this workers' compensation action, claimant Michael Dunham sought a resumption of disability benefits from his former employer, Master Craft Flooring, and its insurer, Companion Property & Casualty (collectively, "Master Craft/Companion"), alleging that he had suffered a change in condition for the worse. The administrative law judge ("ALJ") issued an award granting Dunham's claim, which the appellate division of the State Board of Workers' Compensation (the "Board") reversed. The superior court then reversed the Board and reinstated the ALJ's award, and this Court then granted Master Craft/Companion's application for discretionary review. And because the superior court applied the incorrect standard of review in reversing the Board's award, for which we conclude there was at least some evidence to support, we are constrained to reverse.

Our case begins in November 2004, when Dunham, a construction worker, was involved in a motor vehicle accident while working for Master Craft. Dunham sustained a compensable injury to his neck, for which Master Craft's former insurer was liable. After missing approximately six weeks of work, Dunham returned to

---

light-duty work with Master Craft, which was conditioned upon the restriction that he not lift more than 20 pounds. In May 2007, while Master Craft was insured by Companion, Dunham suffered a second work-related neck injury, and shortly thereafter resigned from Master Craft. He was subsequently hired by a new employer, the Tub Doctor.

Following a hearing in December 2007, the ALJ determined that Dunham's May 2007 injury was a compensable aggravation of the pre-existing November 2004 injury,[1] and ordered Master Craft/Companion to (1) provide medical treatment until the aggravation resolved, and (2) pay temporary total disability ("TTD") benefits for the brief period of time that Dunham was directed by his doctor not to work. The ALJ further concluded that Dunham's resignation from Master Craft's employ was voluntary and otherwise unrelated to his neck injury. The Board accepted the ALJ's award in all respects.

In September 2008, Dunham filed a new notice of claim, prompting the ALJ to conduct a second hearing in April 2009. Dunham alleged that he had since been laid off from the Tub Doctor in January 2008, but apparently did not seriously contest that his termination was unrelated to his injury. He nonetheless asserted an economic change in condition for the worse, contending that he was being denied suitable employment elsewhere because of the May 2007 aggravation of his injury. Specifically, he sought resumption of TTD benefits from June 2008 and continuing thereafter. Master Craft/Companion contested Dunham's claim on the grounds that the May 2007 aggravation for which it had been liable had subsided, and that any current disability suffered by Dunham was due either to his initial November 2004 injury or an aggravation of that injury arising out of his subsequent employment, neither of which would render Master Craft/Companion liable.[2] In support of this defense, Master Craft/Companion submitted a video recording filmed by a private investigator, which it contended showed Dunham working without limitation on March 18, 20, and 25, 2009.

In June 2009, the ALJ issued an award in which it concluded that (1) Dunham had undergone a change in condition for the worse when he ceased working for the Tub Doctor in January 2008, and

---

[1] Pursuant to OCGA § 34-9-1 (4), a compensable injury "shall include the aggravation of a preexisting condition by accident arising out of and in the course of employment, but only for so long as the aggravation of the preexisting condition continues to be the cause of the disability; the preexisting condition shall no longer meet this criteria when the aggravation ceases to be the cause of the disability."

[2] *See generally Beers Constr. Co. v. Stephens*, 162 Ga. App. 87, 89-91 (2) (290 SE2d 181) (1982) (discussing the assessment of liability when a claimant has worked for more than one employer).

(2) Dunham was still suffering from the limitations resulting from the May 2007 neck injury, which the ALJ inferred had not returned to its pre-aggravation condition. While acknowledging some conflicts in the evidence, the ALJ based its conclusion primarily on the medical evidence, specifically noting a March 2009 report from one of Dunham's doctors who opined that Dunham "has not returned to his pre-accident baseline." The ALJ further determined that Dunham had engaged in a diligent job search, crediting Dunham's testimony that he looked for work "every day," but was denied suitable employment because of his aggravated injury. Based upon the videotaped evidence (filmed more than a year after Dunham's lay-off date), however, the ALJ deduced that Dunham had "a full change in condition for the better" as of the March 18, 2009 video. The ALJ therefore awarded Dunham TTD benefits paid by Master Craft/ Companion from January 2008 through March 18, 2009.[3]

Upon reviewing the ALJ's award, however, the Board concluded that the ALJ's findings of fact and conclusions of law were not supported by a preponderance of the evidence and substituted its own factual findings. The Board determined Dunham's testimony to be "vague, evasive, and contradicted" by other evidence, and focused specifically on the videotaped evidence, which it concluded showed Dunham engaged in physical labor while "exhibit[ing] virtually no physical restrictions." The Board further weighed heavily the fact that Dunham's supervisor at the Tub Doctor testified that he was unaware that Dunham was injured or operating under any physical limitations,[4] as well as Dunham's own testimony that he was under no restrictions in 2008 greater than the 20-pound lifting limitation that had first been imposed on him following his original 2004 injury. The Board also disregarded the March 2009 doctor's report that the ALJ found persuasive, after concluding that it was "problematic at best" due to the doctor's "ambivalent" responses as to whether Dunham's current physical condition related to the original November 2004 injury or the May 2007 aggravation of that injury. Based upon this assessment of the evidence, the Board concluded that Dunham's neck injury had returned to its pre-aggravation physical condition. Finally, the Board rejected Dunham's testimony that he looked for work "every day," pointing specifically to the fact that

---

[3] The record does not explain the discrepancy between Dunham's notice of claim, in which he sought TTD benefits beginning in June 2008, with his actual lay-off date, which occurred on January 30, 2008. The ALJ did, however, acknowledge Dunham's testimony that he had earned approximately $3,000 from working odd jobs, and instructed Master Craft/ Companion to deduct the same from Dunham's TTD benefits.

[4] The ALJ also acknowledged this discrepancy but concluded that even if Dunham's supervisor was unaware of his impaired condition, that alone did not counter the existence of his condition, which the ALJ found was otherwise established by the medical evidence.

Dunham offered no evidence concerning where or for what jobs he had applied, the suitability of those jobs, or the outcome of those applications.

On appeal, the superior court reversed the findings of the Board after concluding that "the award of the [ALJ] is supported by a preponderance of competent and credible evidence contained within the records." Master Craft/Companion now challenges the superior court's order, asserting that the court did not give proper deference to the Board's findings. We agree, and reverse the superior court's order.

In Georgia, a workers' compensation claimant who has previously received income-disability benefits for a compensable job-related injury can institute a proceeding to modify a prior final decision due to "a change in condition," which includes "a change in the wage-earning capacity, physical condition, or status of an employee . . . after the date on which the wage-earning capacity, physical condition, or status of the employee . . . was last established by award[.]"[5]

In the case of a claimant who seeks to resume compensation benefits due to a change in condition after his employment has been terminated for reasons unrelated to his job-related injury, that claimant must prove, by a preponderance of the evidence, that he "suffered a loss of earning power as a result of a compensable work-related injury; continues to suffer physical limitations attributable to that injury; and has made a diligent, but unsuccessful effort to secure suitable employment following termination."[6] After receiving the evidence, the ALJ may, in its discretion, draw reasonable inferences that, "despite the claimant's good-faith efforts, his . . . inability to obtain suitable employment was proximately caused by the continuing disability."[7]

Thereafter, the Board—in reviewing an ALJ's grant or denial of workers' compensation benefits—is authorized "to vacate an ALJ's findings of fact and conclusions of law as unsupported by a preponderance of the competent and credible evidence, and to substitute its own alternative findings."[8] In doing so, the Board is likewise

---

[5] OCGA § 34-9-104 (a) (1).

[6] *Maloney v. Gordon County Farms*, 265 Ga. 825, 827-28 (462 SE2d 606) (1995) ("The requisite economic change in condition exists when the employee is able to demonstrate that, as a proximate result of his previous work related injury, he is unable to secure suitable employment elsewhere." (citation and punctuation omitted)).

[7] *Id.* at 828. In adopting the standard set forth *supra*, our Supreme Court overruled prior case law which had imposed upon a claimant the additional burden of proving that he was refused employment specifically because of a continuing disability. *Id.*

[8] *Owens-Brockway Packaging v. Hathorn*, 227 Ga. App. 110, 111 (488 SE2d 495) (1997); *see* OCGA § 34-9-103 (a) ("The findings of fact made by the [ALJ] in the trial division shall be

authorized "to assess witness credibility, weigh conflicting evidence, and draw different factual conclusions from those reached by the [ALJ] who initially heard the dispute."[9] Finally, the Board is also permitted to disregard factual inferences drawn by the ALJ and to substitute its own in place of those inferences.[10]

In contrast, "neither the superior court nor this Court has any authority to substitute itself as a factfinding body in lieu of the [Board]."[11] As a reviewing court, our role is not to return to the findings of the ALJ and examine whether that decision was supported by a preponderance of the evidence, but is instead to review the Board's award for the sole purpose of determining whether *its findings* are supported by any record evidence.[12] If we answer this question in the affirmative, the Board's findings are conclusive and binding, regardless of whether we would have reached the same result if given the opportunity to weigh the evidence in the first instance.[13]

---

accepted by the [Board] where such findings are supported by a preponderance of competent and credible evidence contained within the records."); *Bankhead Enters. v. Beavers*, 267 Ga. 506, 507 (480 SE2d 840) (1997) ("[I]f after assessing the evidence of record, the [Board] concludes that the award does not meet [OCGA § 34-9-103 (a)'s] evidentiary standards, the [Board] may substitute its own alternative findings for those of the ALJ, and [may] enter an award accordingly."); *Logan v. St. Joseph Hosp.*, 227 Ga. App. 853, 858 (2) (490 SE2d 483) (1997) ("Evaluating the competency and credibility of the evidence, the [Board] performs a hybrid review function and decides whether the greater weight lies with the ALJ's findings." (punctuation omitted)).

[9] *Lowndes County Bd. of Comm'rs v. Connell*, 305 Ga. App. 844, 844 (701 SE2d 227) (2010); *see Bankhead Enters.*, 267 Ga. at 508 ("The [Board] is clearly authorized under [OCGA § 34-9-103 (a)] to make findings of fact and conclusions of law." (citation and punctuation omitted)); *L.C.P. Chems. v. Strickland*, 221 Ga. App. 742, 743 (472 SE2d 471) (1996) ("The Board is the sole judge of the evidence, of the credibility of the witnesses, and as to what evidence it will credit as the basis for an award." (citation and punctuation omitted)).

[10] *Medders v. Smith*, 245 Ga. App. 323, 325 (1) (537 SE2d 153) (2000) ("The [Board] is a factfinder, and as such, it is authorized to draw a different inference from that of the ALJ."); *Risner v. Bulk Equip. Mfg.*, 229 Ga. App. 529, 531 (494 SE2d 304) (1997) ("[T]he [Board] is a factfinder and, as such, may draw inferences by virtue of this role.") (Beasley, J., concurring specially).

[11] *Medders*, 245 Ga. App. at 326 (1) (footnote omitted); *Worthington Indus. v. Sanks*, 228 Ga. App. 782, 783-84 (2) (492 SE2d 753) (1997) ("The superior court and this Court must strongly construe [factual] inferences to uphold the award of the [Board]."); *see Logan*, 227 Ga. App. at 859 (3) ("It is axiomatic that the findings of the [Board], when supported by any evidence, are conclusive and binding, and that neither the superior court nor this [C]ourt has any authority to substitute itself as a fact finding body in lieu of the Board." (citation and punctuation omitted)).

[12] *Owens-Brockway Packaging*, 227 Ga. App. at 111 ("If the [Board's] reweighing of the evidence led to a conclusion different from that reached by the ALJ, the superior court is obligated to affirm it if there is any evidence to support it."); *see Risner*, 229 Ga. App. at 531 ("[W]hether or not a later appellate court would view the ALJ's findings as supported by a preponderance, the [Board's] substituted findings must be accepted if there was evidence to support them." (citation and punctuation omitted)) (Beasley, J., concurring specially).

[13] *Georgia-Pacific Corp. v. Wilson*, 240 Ga. App. 123, 124-25 (1) (522 SE2d 700) (1999) ("When supported by any evidence, findings of fact by the Board are conclusive and binding on

Within the context of this narrow legal framework, it is clear that the superior court erred in reversing the Board's award based upon its determination that the ALJ's findings were supported by a preponderance of the evidence. And while we may not disagree with the superior court's conclusion in that regard, that is not the inquiry facing this Court, nor is it one we are authorized to consider. Instead, the only issue before us is whether there is any record evidence to support the Board's award. To this question, we are constrained to answer yes.[14] Accordingly, the judgment of the superior court is reversed.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 16, 2011 — 

*Savell & Williams, Mark S. Gannon, Andrea G. Meucci,* for appellants.

*Robert L. Crowe,* for appellee.

---

reviewing courts, and judges lack authority to set aside an award based on disagreement with the Board's conclusions."); *United Family Life Ins. Co. v. Sasser,* 224 Ga. App. 871, 871 (482 SE2d 491) (1997) ("Regardless of what our findings would be if we were the factfinders, upon appeal to the superior court and this Court, the evidence will be construed in a light most favorable to the party prevailing before the [B]oard, and every reasonable factual inference and presumption of validity of award should be indulged in by the reviewing court." (citation and punctuation omitted)).

[14] *See generally Risner,* 229 Ga. App. at 531 ("The [Board] was authorized to draw a different inference [than the ALJ] from the evidence of [claimant's] physical condition and unsuccessful job search.") (Beasley, J., concurring specially); *Fulton County Bd. of Educ. v. Taylor,* 262 Ga. App. 512, 514-15 (2) (586 SE2d 51) (2003) (Board's determination that claimant had failed to conduct a diligent job search was binding on superior court and should have been affirmed); *Sasser,* 224 Ga. App. at 872 (1) (superior court erred by failing to construe the evidence in the light most favorable to the Board's award that claimant's change in economic condition was not caused by her compensable injury); *T. V. Minority v. Chaffins,* 223 Ga. App. 495, 496 (1) (479 SE2d 373) (1996) (superior court erred by substituting its judgment for that of the Board and rejecting the Board's findings that claimant had not engaged in diligent job search); *L.C.P. Chems.,* 221 Ga. App. at 743-44 (in the face of conflicting evidence, superior court was not authorized to draw inferences different than those drawn by the ALJ/Board as to the diligence of claimant's job search); *see also Lockheed Missiles &c. Co. v. Bobchak,* 194 Ga. App. 156, 158 (1) (390 SE2d 82) (1990) (superior court cannot substitute its judgment for that of the Board when the evidence will support two different conclusions).