**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 26, 2014**

# In the Court of Appeals of Georgia

A14A0436. WATERS v. PCC AIRFOILS, LLC et al.

RAY, Judge.

Janet Waters filed this discretionary appeal after the superior court reversed an award of attorney fees by the State Board of Workers' Compensation (the "Board") against her former employer, PCC Airfoils, Inc. The Board had determined, pursuant to OCGA § 34-9-108 (b) (1)[1], that PCC Airfoils had unreasonably defended against Waters' claim for benefits. For the reasons that follow, we reverse the superior court's order.

Waters alleged that she was injured in accidents arising out of and in the course of her employment on October 23, 2009, and on November 4, 2010. Both dates

---

[1] This Code section was amended after the date of the Board's decision, but the language at issue at issue in this case did not change. Laws 2011, Act 52, § 49, effective January 1, 2013.

involved, among other allegations of injury, claims of repetitive work injuries to her left hand and wrist. The October 23, 2009, injury is the only one at issue in this appeal.

The record before us presents conflicting information about Waters' injuries, medical evaluations, and Workers' Compensation status, as we will detail below. The issue before us is whether, given the conflicting information, the superior court erred in reversing the Board and determining that PCC Airfoils raised a reasonable defense to Waters' claim for attorney fees.

Waters did "touch up" work for PCC Airfoils for about 20 years, using an air gun to grind bits of excess metal off of parts. The job required her to use her right hand to "mash" the airgun, and to use her left hand to flip, turn, and move the part. She was diagnosed with "severe bilateral median nerve entrapment in the carpal tunnel, right much worse than left" on October 26, 2009, three days after the initial reported injury date. Waters notified PCC Airfoils of the complaints involving both hands, and an employer's representative coordinated her treatment with Dr. David M. Banks, whom Waters chose from the employer's panel of physicians.

On November 17, 2009, Banks noted that "no *significant* repetitive duties are required from the left hand." (Emphasis supplied.) However, on November 23, 2009,

2

Banks recommended surgery on *both* wrists. His clinical notes state that Waters presented for evaluation of

> bilateral upper extremity tingling and numbness. Workers' compensation manager is present. Ms. Waters complains of severe *bilateral* hand tingling and numbness. *Workers' compensation issue. . . .* [N]erve conduction studies were reviewed which showed *neurocompressive lesion at bilateral wrists*, right more severe than left. . . . *Bilateral carpal tunnel syndrome*; failure of conservative treatment. . . . At this point *have recommended bilateral endoscopic carpal tunnel releases*. She would like to consider whether she would like to have this in a *sequential or staged fashion*.

(Emphasis supplied.) At a hearing before an administrative law judge ("ALJ") regarding both the October 2009 and November 2010 injury dates, Waters testified that Dr. Banks recommended surgery on "both hands," but she elected not have surgery on both hands at once so that she could retain the use of one hand. None of Waters' physicians testified at the hearing.

On December 16, 2009, Waters had carpal tunnel release surgery only on her right wrist. PCC Airfoils, as self-insurer, paid for the surgery. Waters returned to work, but continued to experience pain in various parts of her body and worked in several lighter-duty jobs that did not involve the same repetitive actions as her "touch

3

up" job. Banks' clinical notes from January 26, 2010, again identify "bilateral carpal tunnel syndrome" and state that "[h]er left hand has carpal tunnel and work is trying to have her perform duties with her left hand." He writes that "she is having severe pain to bilateral hands and shoulders and do not feel that she would be able to perform any type of activity with her hands. My recommendation at this point is for formal aggressive occupational therapy for her hands." He also recommended on that date, "limited use of right arm" and "limited use of left arm." Waters last went to work on November 4, 2010. Waters had carpal tunnel release surgery on her left hand on December 22, 2010.

In June 2011, about one-and-a-half years after Waters' October 2009 injury, Dr. Banks signed a statement about that injury date, saying that he did

> not believe that [Waters'] conditions with respect to her left upper extremity, legs, or shoulder are related to her work activities. Only her right wrist injury is a work-related injury, and her other problems are not related to the right wrist injury. Ms. Waters' continued inability to work is due to problems other than her right wrist.

After Waters made Workers' Compensation claims for the October 23, 2009, and November 4, 2010, injuries, the ALJ awarded benefits for Waters' left carpal tunnel condition, reimbursement of medical expenses, and attorney fees representing

4

25 percent of income benefits related to the October 23, 2009, injury only. The ALJ denied her request for benefits related to the November 4, 2010, injury.

PCC Airfoils appealed to the Board's appellate division, which fully adopted the ALJ's decision. PCC Airfoils then appealed to the Superior Court of Coffee County. The superior court affirmed the appellate division's award of benefits and medical expenses for Waters' left carpal tunnel condition, which PCC Airfoils has not appealed. The trial court also reversed the award of attorney fees. Waters filed this appeal.

OCGA § 34-9-108 (b) (1) provides that "[u]pon a determination that proceedings have be brought, prosecuted, or defended in whole or *in part* without reasonable grounds, the administrative law judge or the board may assess the adverse attorney's fee against the offending party." (Emphasis supplied.)

> Whether an employer/insurer has defended against a claim without reasonable grounds presents an issue of fact for determination by the Board, and if there is any evidence to support the award, the superior court and this Court must affirm. But the ALJ may not award attorney fees where the matter is closely contested on reasonable grounds.

(Footnotes omitted.) *Printpack, Inc. v. Crocker*, 260 Ga. App. 67, 72-73 (3) (b) (579 SE2d 225) (2003). In the case before us, the ALJ determined as a matter of fact that

5

[t]he fact that Dr. Banks discussed surgery of both wrists demonstrates that as early as the fall of 2009 the claimant was indeed experiencing painful symptoms of carpal tunnel syndrome in both wrists. The question in that time period was not whether each wrist was in need of surgery, but rather whether both would be done at once. Her job duties as a touch-up finisher were to hold an air gun with the right hand and squeeze the lever while holding the engine part being finished in the left hand. The job was not a production task, *though the duties were repetitive*. The claimant worked at this same job for many years. Although Dr. Banks did write a note stating that only her right hand problem was caused by her job, I find that *this opinion is not consistent with his prior notes.* This last opinion note was dated in June of 2011 and also addressed the other conditions of her legs and shoulder, and I conclude that the opinion *was not artfully worded and therefore vague and ambiguous*. I find that the claimant's regular job duties were repetitive and caused her left carpal tunnel syndrome which became disabling.

(Emphasis supplied.)

Banks's notes were indeed inconsistent. He found that repetitive duties were required of the left hand, albeit not significant ones; he diagnosed bilateral carpal tunnel syndrome; and he recommended surgery on both wrists, noting that this was a "Workers compensation issue" as early as November 23, 2009. However, in clinical notes dated between 6 and 13 months after the injury date – April 6, 2010, July 22,

6

2010, and November 30, 2010 – Banks states (without any explanation or justification) that the left-hand injury "was not considered [a] worker's compensation injury[,]" that it "has not been accepted by Worker's Comp to date[,]" and that "So far it has not been a Worker's Compensation injury[,]" though his first statement that *he* does not believe the injury is work-related was rendered some 18 months after the injury, in June 2011. On November 10, 2010, more than a year after the injury date, another physician, Dr. Conrad Harper, completed disability paperwork related to Waters' problems with her left hand. He found that the condition commenced on October 15, 2009, and reported that the injury did not arise from her employment.

Put more simply, approximately 18 months elapsed from the time that Banks identified Waters' bilateral carpal tunnel as a "Workers compensation issue" in November 2009 and his June 2011 letter stating that he did not believe the problems with Waters' left upper extremity were work-related. The WC-1 for Waters' October 2009 injury shows that she injured both hands, noting that "Employee claims pain is from using die grinder; pain in *hands*, rt shoulder and low back." (Emphasis supplied.) However, we see nothing in the record indicating that the employer controverted the claim related to the October 2009 injury as it relates to the left hand.

In some other cases, we have found that an employer's defense against a claim was reasonable where there was conflicting information. However, those cases are distinguishable because the ALJ in the instant action did not "completely ignore[] the evidence supporting [the employer's] defense." *Pet, Inc. v. Ward*, 219 Ga. App. 525, 526 (466 SE2d 46) (1995) (reversing superior court's affirmance of Board's finding of unreasonableness where employer had consistently contested work-related nature of claim, ALJ ignored evidence supporting employer's defense, and treating physician opined that claimant could return to light-duty work). Nor did the ALJ in the instant case ignore or fail to consider the conflicting medical evidence, or fail to consider the evidence as a whole. *Autry v. Mayor & Aldermen of the City of Savannah*, 222 Ga. App. 691, 692 (475 SE2d 702) (1996) (affirming superior court's reversal of Board's assessment of attorney fees where the Board did not consider the "whole of the evidence" and overlooked two of the three bases upon which treatment was contested) and *Brigmond v. Springhill Homes of Ga.*, 180 Ga. App. 875, 876 (350 SE2d 846) (1986) (affirming trial court's reversal of Board's attorney fee award where there was conflicting medical evidence and record contained "no evidence upon which to base a finding of unreasonableness with respect to [appellee's] defense") (Citation omitted).

8

The ALJ's opinion makes clear that she weighed conflicting evidence related to the physician's initial diagnosis and clinical notes that the injury was a "workers' compensation issue" against his later statement that the injury was not work-related. In doing so, the ALJ made a credibility determination about those conflicting notes and about the wording of Banks' June 2011 letter.

It is well settled that the Board is authorized to assess witness credibility and weigh conflicting evidence. *Master Craft Flooring v. Dunham*, 308 Ga. App. 430, 433-434 (708 SE2d 36) (2011)."In contrast, neither the superior court nor this Court has any authority to substitute itself as a fact finding body in lieu of the Board." (Punctuation and footnote omitted.) Id. at 434. "When reviewing a workers' compensation award, we construe the evidence in a light most favorable to the party prevailing before the [Board's] appellate division and will uphold the Division's factual findings if there is *any evidence* to support them." (Footnote omitted; emphasis supplied.) *L & S Constr. v. Lopez*, 290 Ga. App. 611, 611 (660 SE2d 1) (2007).

In a case analogous to the instant action, *St. Joseph's Hospital, Inc. v. Cope*, 225 Ga. App. 781 (484 SE2d 727) (1997), the claimant had been treated for carpal tunnel syndrome for several years absent a notice to controvert, before her treating

physician "changed his mind[,]" stating that "'after my review of this patient's history, I don't feel like I made the correct assessment that a right carpal tunnel syndrome was related to this [work] injury.'" Id. at 781-782. In *St. Joseph's Hospital*, the Board's appellate division found that the employer/self-insurer at least in part unreasonably defended the claim because the physician "treated the employee for a period of approximately two and one half years without ever contending that the right upper extremity problems were not related to the original injury." Id. at 783. The appellate division determined that, as did the ALJ in the instant case, the physician's later opinion was "inconsistent with his treatment and opinions during his term of care of the employee. . . . [The doctor's] previous reports and letters are more persuasive than his deposition testimony." (Punctuation omitted.) Id. at 783. Noting that there was no timely filing of a notice to controvert, this Court determined that the employer's defense was not reasonable, and attorney fees were merited. Id. at 784 (3). See also *Nu Skin Int'l, Inc. v. Baxter*, 211 Ga. App. 32, 33 (438 SE2d 130) (1993) ("When an employer controverts a claim, it informs the employee that in its view the injury is not compensable") (citation omitted).

In the instant case, PCC Airfoils apparently did not controvert the claim; the physician initially determined that Waters needed carpal tunnel surgery on both hands

and that this was a "Workers compensation issue"; about 6 months passed before the physician initially indicated, without attributing his statement to any source, that Workers' Compensation might not cover the injury; and 18 months passed before the physician opined that the injury was not work-related. Within the context of the narrow legal framework at issue here, see *Master Craft Flooring*, supra at 435, and given the uncontested nature of Waters' injury in the initial months, there was some evidence to support the ALJ's determination that the employer's defense was unreasonable as per OCGA § 34-9-108 (b) (1)'s mandate that fees may be awarded if proceedings have been defended even "*in part* without reasonable grounds[.]" (Emphasis supplied.) See also *Printpack*, supra at 72-73 (award must be affirmed if supported by any evidence).

*Judgment reversed. Andrews, P. J., and McFadden, J., concur.*

July 28, 2014

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, PCC Airfoils contends that we overlooked or ignored material evidence in the record. Specifically, PCC Airfoils claims that we ignored two WC-3 notices to controvert Waters' claim. PCC Airfoils claims that these notices were dated January 22, and September 22, 2010, approximately three to eleven months after the relevant injury date of October 23, 2009. PCC Airfoils argues that because it controverted the claim, we erred in relying on *St. Joseph's Hospital*, supra at 784 (3) (finding that employer's defense of attorney fee claim was unreasonable where there was no timely filing of a notice to controvert). Despite the fact that "[i]t is not the function of this Court to cull the record on behalf of a party in search of instances of error," *Cronin v. Homesales, Inc.*, 296 Ga. App. 293, 294 (675 SE2d 35) (2009) (footnote omitted), a diligent search of the record performed before our opinion was issued and again after this motion for reconsideration was filed did not reveal the WC-3 notices. Further, the Board's index to its own record does not list these notices, nor did PCC Airfoils provide record citations to these documents in its motion for reconsideration or its appellate brief. PCC Airfoils has failed to carry its burden of proving error by the record. Id.

PCC Airfoils also argues that we deviated from our prior decisions dealing

with conflicting information from parties or physicians in upholding the Board's finding that PCC Airfoils' defense of the claim was unreasonable. PCC Airfoils claims that the record shows no work restrictions on Waters' left hand. However, the record contains at least three physicians' reports requiring "limited use," "limited duty," or "no repetitive work" and either identifying the problem as bilateral carpal tunnel syndrome or left-hand pain. As we noted in our opinion, OCGA § 34-9-108 (b) (1) provides that if proceedings have been defended even "*in part* without reasonable grounds, the administrative law judge or the board may assess the adverse attorney's fee against the offending party." (Emphasis supplied). Further, "if there is any evidence to support the award, the superior court and this Court must affirm." (Footnotes omitted.) *Printpack*, supra at 72 (3) (b). Accordingly, we find no merit in PCC Airfoils' arguments.