A07A2159. SMART DOCUMENT SOLUTIONS, LLC
v. HALL et al.
(659 SE2d 838)

BARNES, Chief Judge.

Smart Document Solutions, LLC ("Smart Document"), filed a declaratory judgment action against the State Board of Workers' Compensation and several Board members (collectively, "the Board"), asking for guidance regarding the appropriate fee structure for medical photocopying services in workers' compensation proceedings. The Board moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court granted the motion, and Smart Document appeals. For reasons that follow, we affirm.

A motion to dismiss for failure to state a claim should be granted "where [the] complaint shows with certainty that the plaintiff would not be entitled under any state of facts that could be proved in support of the claim." *Butler v. Dawson County*, 238 Ga. App. 808, 810 (518 SE2d 430) (1999). In reviewing the trial court's ruling, we construe the complaint in Smart Document's favor. See *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 208 (1) (541 SE2d 33) (2000).

Viewed in this manner, the record shows that Smart Document provides photocopying services in the medical field. Physicians, hospitals, and medical centers "outsource" their copying needs to Smart Document, which reproduces medical records upon request. According to the complaint, Smart Document "routinely receives and handles requests for the copying and furnishing of medical records in relation to workers' compensation claims pending before the Board."

Through its declaratory judgment action, Smart Document sought a ruling on permissible charges for photocopying services in workers' compensation cases.

In 2001, the legislature amended section 31-33-3 of the Health Records Act to establish a general fee schedule for medical record photocopying. See OCGA § 31-33-3 (a); Ga. L. 2001, p. 1157, § 2. Compare OCGA § 31-33-3 (a) (2000). The Board, however, does not follow that schedule. Instead, it has developed its own photocopying fee structure that, at present, incorporates lower charges than those permitted by OCGA § 31-33-3. Asserting that it should be paid pursuant to the Health Records Act, Smart Document challenges the Board's authority to alter the statutorily-set fees.

Although the Health Records Act establishes a general photocopying fee structure, it exempts from that structure "records requested in order to make or complete an application for a disability benefits program." OCGA § 31-33-3 (a). Citing the exemption, the trial court determined that workers' compensation proceedings fall outside of the Act's fee requirements. It thus found OCGA § 31-33-3 inapplicable and dismissed Smart Document's complaint.

On appeal, Smart Document argues that the workers' compensation scheme does not qualify as a "disability benefits program." We disagree. The General Assembly enacted workers' compensation legislation " 'to alleviate the suffering of injured workers and their families by providing immediate and certain financial assistance . . . as long as the injury arose out of and in the course of employment.' " *Bayer Corp. v. Lassiter*, 282 Ga. App. 346, 349 (638 SE2d 812) (2006). To achieve this purpose, it designed a compensation program that, by its own terms, provides benefits to workers afflicted by a total or partial disability. See OCGA §§ 34-9-261 to 34-9-264. The legislature also allowed employers and benefit providers to "set off" workers' compensation benefits against other employer-funded disability payments. See OCGA §§ 34-9-243 (b); 34-9-244. These set-off provisions, which prevent a double recovery for the same injury, further demonstrate the disability function served by the workers' compensation scheme.

Smart Document concedes that the workers' compensation system has a disability component, but it argues that certain features distinguish the system from what it terms "true disability benefits programs," such as Social Security disability insurance. In construing the workers' compensation legislation, however, we must consider the scheme as a whole and look for the legislature's intent. *Footstar, Inc. v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006). Given the focus on injury and disability, we find that the legislature intended the scheme to function as a disability benefits program.

Smart Document next focuses on the fee exemption's use of the term "application." See OCGA § 31-33-3 (a). It contends that workers' compensation claimants do not file an "application" to obtain benefits, placing the program outside of the exemption. Again, we disagree.

As commonly defined, the term "application" means "[a] request or petition." Black's Law Dictionary (8th ed. 2004). Undoubtedly, workers' compensation payments *may* commence simply upon notice of an injury-causing accident. See OCGA § 34-9-80. But the statutory scheme is, at base, "a complete and exclusive system and procedure for the resolution of disputes between employers and employees . . . concerning accidents and injuries arising out of and in the course of employment." OCGA § 34-9-23. Such dispute resolution necessarily anticipates that benefit claims will be filed by employees, controverted by employers, and ultimately resolved through the workers' compensation framework. See, e.g., OCGA §§ 34-9-82 (outlining procedure for filing claims); 34-9-102 (providing for hearing and resolution by administrative law judge).

In construing the fee exemption, we must give the words employed by the legislature " 'their ordinary and common meaning where the statutory language is plain and unambiguous.' " *City of Atlanta v. Yusen Air & Sea Svc. Holdings*, 263 Ga. App. 82, 84 (1) (587 SE2d 230) (2003). A claim or request for workers' compensation relief unambiguously falls within the definition of "application." The fee exemption, therefore, includes requests for disability benefits such as those available through the workers' compensation scheme.

Finally, we note that the Board has the authority and responsibility to set service fees in workers' compensation proceedings. OCGA § 34-9-205 (a), (b). Those proceedings often require the production of an employee's medical records. See OCGA § 34-9-207 (a). And in *Smart Professional Photocopy Corp. v. Dixon*, 216 Ga. App. 825, 827 (456 SE2d 233) (1995), we determined that the Board's regulatory authority extends to photocopying fees charged by providers like Smart Document.

Although the legislature adopted the Health Records Act fee structure after the *Dixon* decision, we presume that the General Assembly knew the state of the law — specifically, the Board's authority to regulate this type of charge — when it adopted the structure. See *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615, 619-620 (2) (437 SE2d 302) (1993). Given the disability exemption in OCGA § 31-33-3, we find that the legislature intended to maintain the Board's authority over photocopying fees in the workers' compensation context. See id. (statutes are "construed in connection and in harmony with the existing law, and their meaning and effect is to be determined in connection, not only with the common law and the

constitution, but also with reference to other statutes and the decisions of the courts") (punctuation omitted).

The Workers' Compensation Board, rather than the Health Records Act, regulates medical photocopying charges in workers' compensation proceedings. Accordingly, the trial court properly dismissed Smart Document's complaint for failure to state a claim upon which relief could be granted. See *Butler*, supra, 238 Ga. App. at 810.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2008.

*Alston & Bird, Leslie E. Wood, Robert P. Riordan,* for appellant.
*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Robin G. Cohen, Assistant Attorney General,* for appellees.